IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELL'S DISPOSAL & RECYCLING, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| CITY OF LANCASTER, *et al.*, | : | |
| Defendants | : | NO. 07-3545 |

MEMORANDUM OPINION

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE                                              December 30, 2011


**I. Factual Background and Procedural History[1]**

On August 27, 2007, Plaintiff, Shell's Disposal and Recycling, Inc., ("Shell") sued the City of Lancaster, Pennsylvania, its City Council, Mayor, Department of Public Works, and various supervisors, bureaus and other departments ("Defendants") seeking relief based upon alleged deprivations of personal and property rights under both the United States and Commonwealth of Pennsylvania Constitutions. More specifically, Plaintiff asserts that Defendants conspired to unlawfully eliminate his small licensed trash hauling business which had operated in Lancaster since 1990[2], substituting for it one trash hauler that was awarded an exclusive government contract for residential rubbish removal inside Lancaster.

On April 6, 2009, an initial in-court mediation was held and attended by Willie E. Shell ("Mr. Shell"), his nephew, Marnell Cummings, Luther Weaver III, Esquire, counsel for Plaintiff, and James D. Young, Esquire, counsel for Defendants. The initial proceedings precluded any meaningful

---

[1] The facts contained in this background and procedural history are truncated because this memorandum opinion is written primarily for the parties involved.

[2] Since 2004, Plaintiff also had permission from The Pennsylvania Department of Environmental Protection to haul municipal solid waste and operate a recycling center. *See* Complaint ("Compl.") Doc. No. 1.

discussions due to insufficient evidence of the value of existing contracts and alleged losses, as well as the absence of any meaningful offer from Defendants. When these same individuals reassembled, on August 18, 2009, discussions made little headway; it was clear that resolution of the pending Lancaster contempt proceedings would be essential in effectuating a "global" settlement package. To this end, on October 23, 2009, J. Allen Taylor, Esquire, counsel for the Lancaster County proceedings, joined the usual team of negotiators on behalf of Shell and, although a settlement was not reached, all major issues were discussed and a framework for future settlement discussions was laid. Finally, on January 15, 2010, this court successfully assisted the parties in reaching a global agreement. Mr. Shell, attorneys Taylor and Weaver on behalf of Plaintiff, Neil L. Albert and James D. Young, counsel for the municipal defendants were present.[3]

The following global settlement terms, as reflected in my personal mediation notes, were stated and agreed upon by all parties:

(1) the City of Lancaster would deem "satisfied" Plaintiff's outstanding loan to the City;

(2) Plaintiff was to cease operation of its recycling center and transfer it to another operator;

(3) the City of Lancaster would deem satisfied Plaintiff's real estate taxes owed from 2000;

(4) the City of Lancaster would deem satisfied district justice fines and costs levied against Plaintiff in prior proceedings;

(5) the City of Lancaster would withdraw a then-pending contempt of court proceeding against Plaintiff in Court of Common Pleas for Lancaster County;

---

[3] Plaintiffs submitted an itemized list of present customers in a letter to the court and all parties dated on January 12, 2010, as well as tax returns and financial data for FY 2003-2008 on August 19, 2009. This data formed a basis upon which calculations of expected profits and losses caused by the switch to the unitary hauling system could be calculated and discounted, based on realistic assumptions, e.g. that people move, decide to change haulers, etc.

      (6) Plaintiff would continue to haul residential trash until September 30, 2011 and, thereafter, transfer all residential contracts to the City's unitary hauler;

      (7) Plaintiff could continue to haul non-residential trash in the City of Lancaster;

      (8) Plaintiff would withdraw the instant federal lawsuit with prejudice;

      (9) the partes would execute a mutual release with no admission of liability for any party;

      (10) the parties would enter sign a mutual non-disparagement clause; and

      (11) the parties would negotiate a reasonable attorney's fee for Plaintiff's counsel.

At the conclusion of the January 15, 2010 mediation session, with all parties present at the conference table, the foregoing terms were reiterated; ample opportunity was afforded to the parties to indicate any omissions, variances or inaccuracies in the court's recorded terms. *See* Transcript of Special Argument Hearing, 5/28/10, ("Tr. 5/28/10") at 5, 29, Doc. No. 88, (explaining that the parties agreed to the terms of the January 15, 2010 Settlement Agreement). Furthermore, the court emphatically informed Plaintiff that, with his assent, this agreement would control and put all pending state and federal issues to rest. Plaintiff and Defendants acknowledged the accuracy and completeness of the above-noted settlement terms.[4] *See id.* at 5-6.

---

[4] The parties acknowledged, on the record, that the case settled on January 15, 2010. During the May 28, 2010 Special Argument Hearing, Defense Counsel James D. Young stated:
> There is no dispute as to the terms and conditions of the Settlement Agreement. There's no argument that the Mutual Release and Settlement Agreement does not reflect the terms and conditions that Your Honor, yourself, helped to negotiate back on [January 15, 2010] and the intention of the parties through that Settlement Agreement should be enforced.

Tr. 5/28/10 at 6. Plaintiff's counsel, Luther E. Weaver, III, also confirmed that on January 15, 2010 a settlement occurred. Plaintiff's Counsel stated:
> With regard to the motion, I must say as an officer of the Court, any attorney wears – has several ethical obligations; clearly an ethical obligation to the client, in this case Shell's Disposal, but also an obligation to the Court. And I must say, in light of my ethical obligations as an officer of the Court, I sat through all the negotiations in this case. I sat through the negotiations on [January 15, 2010]. My client agreed to the terms of the Settlement Agreement. We – afterwards we talked about it. We took a cab from the Courthouse. I was present with Al Taylor, the other attorney

Accordingly, that same day, the undersigned judge entered an Order marking the case "SETTLED" and "CLOSED" for statistical purposes, while specifically retaining jurisdiction to enforce the terms of the negotiated Settlement Agreement. *See* June 15, 2010 Order, Doc. No. 79. Counsel promptly reduced these terms to writing in a Mutual Release and Settlement Agreement. *See* "Defendant's Concurred In Motion to Confirm and Enforce Settlement Agreement" ("Defs.' Mot.") Doc. No. 85, Exhibit ("Ex.") A. This court has reviewed the proposed written confirmation of the settlement and finds its terms to be consistent with the oral arrangement. However, Plaintiff has refused to sign the Agreement, notwithstanding his counsel's and this court's encouragement to do so. Therefore, on April 28, 2010, Defendants filed a Motion to Confirm and Enforce Settlement Agreement. *Id*.

On May 28, 2010, the undersigned conducted a hearing concerning Defendants' Motion. Tr. 88 at 1-75. Upon review of the transcript of that hearing, the draft Mutual Release and Settlement Agreement and the undersigned's contemporaneous notes of what transpired on January 15, 2010, this court finds that the parties, as a matter of fact and law, settled this lawsuit on January 15, 2010. For the following reasons, Defendants' Motion to Confirm and Enforce Settlement Agreement will be GRANTED.

## II. Discussion

A settlement agreement is a contract. *Saber v. Financeamerica Credit Corp.,* 843 F.2d 697, 702 (3d Cir. 1988). An order to enforce a contract is an order for specific performance. *Id.* Plaintiff's claims arise under federal law and state law, however, even if he had brought only federal

---

who was here, and also Mr. Shell's nephew, and at no time during the cab ride when we discussed the settlement was there any indication that the case was not settled.

*Id*. at 8.

claims, Pennsylvania contract law could be applied to determine enforceability of the settlement agreement. *See California Sun Tanning USA, Inc. v. Electric Beach, Inc.*, 369 Fed. Appx. 340, 346 n.6 (3d Cir. 2010) (non precedential) (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1032-33 & n.6 (3d Cir. 1991); *Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir. 1986)).

Pennsylvania law favors settlement agreements. *Mastroni-Mucker v. Allstate Insurance Co.*, 976 A.2d 510, 518 (Pa. Super. Ct. 2009). A valid contract requires an offer, acceptance and consideration (for settlement agreements, typically the plaintiff agrees to terminate his lawsuit in exchange for a sum of money). *Id.* Even if the settlement agreement is not reduced to writing, it is enforceable so long as the requisite elements for a valid contract exist. *Id.*

Here, as the foregoing background section indicates, an offer to settle was accepted in the presence of the undersigned judge and four attorneys. Plaintiff has already received some benefits of the bargain struck. It has avoided attending local code violation hearings, paying fines and/or possible permanent closing of his recycling business; Defendants are forgiving substantial sums of money owed to them by Plaintiff. That evidence is sufficient to prove existence of a valid contract, notwithstanding Plaintiff's failure to execute a written settlement agreement and mutual releases. *See Mastroni-Mucker*, 976 A.2d at 519.

This court conducted a hearing on May 28, 2010 to determine whether it should enforce the settlement reached on January 15, 2010.[5] *See* Tr. at 1-75. Prior to and at the hearing, Plaintiff asserts three main points: (1) the amounts Defendants represented were necessary to satisfy his

---

[5] It should be further noted that prior to October 20, 2009, Plaintiff filed for Chapter 11 Bankruptcy protection. Accordingly, the case was put into suspense. At the request of all parties, the bankruptcy court, lifted the stay, by order dated March 30, 2011 expressly so that exploration of settlement in this court could continue. Notably, Plaintiff agreed to request permission of the bankruptcy court to hire an expert to quantify how much it would cost to reroute. However, such an undertaking did not occur. Thus, to date, any harm occasioned by the change of days is both undocumented and moot, inasmuch as the contracts have expired.

outstanding loan(s) were grossly inaccurate, such that, he was being underpaid for the settlement; (2) rerouting the trucks will cause undue economic hardship; (3) Plaintiff cannot transfer the Recycling plant, because that would violate the terms and conditions of loan encumbrances and collateral on its assets. *See id.* These arguments are untenable.

Plaintiff quibbles about the amounts of money the City of Lancaster agreed to pay. Essentially, Plaintiff's gripe is that approximations offered during the negotiation process overestimated balances Plaintiff owed to the City of Lancaster for business loan(s) it was required to repay. Defendants provided computer print-outs and other loan documentation to substantiate the balances it alleges are owed. Plaintiff, on the other hand, presented what appears to be his list of amounts paid and sums still due; however, no check stubs, bank records, or other form of verification accompanies Plaintiff's assertions. Most interestingly, by Plaintiff's own accounting, in an August 9, 2010 letter to the court and defense counsel, the loan discrepancy was $3,656.92, the tax lien variance was $64.52 and the fine amount due of $12,000 was 100% accurate. This court finds that no material misrepresentations were made during settlement; the description "approximately" always preceded discussions of the $285,000 forgiveness figure that would inure Plaintiff's benefit under the Settlement reached.

Plaintiff further complains that rerouting his trash trucks, in order to avoid being in sectors on the same day as Lancaster City haulers, will cause economic hardship. In a letter dated September 19, 2010, Plaintiff alleged that it would cost Plaintiff $50-100,000 to comply with this condition. Nevertheless, the only "actual cost" Plaintiff identified was $14,000, the amount required to upgrade the computer and software. First, Defendants repeatedly offered assistance with rerouting. Second, all other independent haulers complied in a reasonable amount of time, without alleging financial

hardships. Third, Plaintiff's argument that residents would become confused is neither convincing nor relevant. The argument is unpersuasive, because, for example, once advised to place their trash receptacles at the curb on Wednesday, instead of Tuesday, simply the resident need only remember the new day. More importantly, this issue is now moot, inasmuch as all residential contracts either expired or were dissolved under the Agreement, on September 30, 2011.

Plaintiff agreed to transfer the Recycling Plant to a new owner/operator. It was afforded a period of approximately ninety (90) days to identify the prospective transferee as well as to allow the new owner/operator to comply with local ordinances/permits, etc. to operate the business, he has failed to do so. At the hearing, Plaintiff argued that transference of the recycling businesses' ownership would constitute a breach of loan documents. The Pennsylvania Minority Business Development Authority, (PMBDA), loaned Plaintiff $275.00 in 1994 to start the hauling business. Various personal and real property, personal guarantees and other collateral secured the perfected lien(s).

David Stevenson, the representative of PMBDA who attended the May 28, 2010 hearing and was given an opportunity to speak, did not express reluctance to transferring the operations of the Recycling plant; obviously, appropriate collateral and executed assurances would be obtained. *See* Tr. at 34-37. Moreover, PMBDA, as a first lien holder, was provided an opportunity to object to the terms of the settlement and did not do so, even after the hearing. *See id*. Furthermore, had this case not settled on January 15, 2010, Defendants would have taken Plaintiff to Lancaster County Common Pleas Court on January 20, 2010for a hearing that was expected to result in withdrawal of Lancaster City permits for Shell to operate the Recycling plant, secondary to numerous cited, ongoing operational violations. Clearly, it was in PMBDA's best interests to keep the facility open,

especially with a more responsible owner/operator who would continue to pay off business-related debts as part of that transfer. Moreover, counsel for both sides knew or should have known about these outstanding financial obligations at the time negotiations were ongoing and could have stated any concerns during the mediation sessions that spanned the better part of a year. Thus, the loan owed PMBDA is insufficient cause to nullify the settlement.

Finally, this court finds that Plaintiff has already received the benefit of the settlement agreement. Plaintiff was given an extension of time in which to turn over residential clients to the City's unitary hauler, an opportunity to gain financial benefit from the transfer of Plaintiff's Recycling plant, resolution of state court contempt and injunctive proceedings,[6] and an improved credit history based upon forgiveness of significant loans and fines owed to Lancaster City. It would be patently unfair for Plaintiff to, now that the contracts have expired already, revive litigation in federal court over their value. Plaintiff's change of heart does not nullify the settlement agreement.

### III.  Conclusion

Plaintiff clearly entered into an enforceable settlement agreement with Defendants and none of its objections have merit. Plaintiff has presented unsubstantiated, inaccurate and immaterial objections to the Settlement Agreement. Therefore, Defendants' Concurred in Motion to Confirm and Enforce Settlement Agreement is **GRANTED.**

An appropriate order follows.

---

[6] Notably, on October 20, 2009, state contempt proceedings against Plaintiff were stayed, at the request of Defendants, pending the outcome of this court's mediation discussions. *See City of Lancaster v. Willie E. Shell et al.,* No. C1-01-10445, Order (Ct. Com. Pl. Lancaster County, Oct. 20, 2009). Had Plaintiff not entered into a global settlement on January 15, 2010, Plaintiff would have faced a hearing on issues of Contempt and Injunctive Relief on January 20, 2010 in state court. *See Id.*